**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**


**KAREN E. CROFT,**

     **Plaintiff,**

**vs.**                                                    **CASE NO. 1:05CV15-MMP/AK**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security**

     **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act
(Act) for review of a final determination of the Commissioner of Social Security
(Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB)
filed under Title II of the Act and supplemental security income benefits (SSI) filed under
Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and
determinations of the Commissioner are not supported by substantial evidence; thus,
the decision of the Commissioner should be reversed and remanded for further
proceedings.

## A.    PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI on March 23, 2001, alleging a
disability onset date of January 22, 2001, because of stomach surgeries, low back pain,

headaches, dizziness, throat polyps, depression and anxiety.  Plaintiff petitioned for a

hearing before an administrative law judge (ALJ), who conducted a hearing on February

23, 2004, and entered an unfavorable decision on May 26, 2004.  The Appeals Council

denied Plaintiff's request for review, thus making the decision of the ALJ the final

decision of the Commissioner.  This action followed.

**B.**   **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had severe impairments including pernicious anemia

secondary to gastric bypass, status gastric bypass revisions, status post incisional

hernia repair times three, chronic abdominal pain, bilateral optic neuropathy,

degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome,

improved, polyarthritis of small joints of the hands, anxiety, and depression, but these

impairments either singly or in combination did not meet the listings.  (R. 17).

The ALJ found that Plaintiff had only mild limitations in her daily activities, no

difficulties in social functioning, and moderate limitations in her concentration,

persistence, and pace, but with no episodes of decompensation.  (R. 18).

The ALJ found that Plaintiff was not precluded from all work activity, that she was

not totally disabled, and that her allegations of pain and limitation were not entirely

credible.  (R. 18).

The ALJ found that Plaintiff was capable of a full range of sedentary work, that

she would require the freedom to stand up two minutes out of every hour, that she could

use her hands frequently, but not in a repetitive way and because she frequently drops

things she would be precluded from working with hazardous materials, such as carrying

hot oil.  Because the vocational expert testified at her hearing that her past relevant

**No. 1:02CV125-SPM/AK**

work as a bus driver was medium level, the ALJ found that she was unable to perform her past relevant work.  Using the Medical-Vocational Guidelines as a framework for decision, the ALJ also found that she was younger individual with a limited education and the transferability of any skills from her past relevant work was not an issue. Finding that her ability to perform sedentary work was "impeded by additional exertional and/or nonexertional limitations," he asked the vocational expert to identify jobs which she could perform.  (R. 22).  The expert identified a number of jobs, none of which required a strong grip.  (R. 22).

**C.** **ISSUES PRESENTED**

Plaintiff argues that: (1) the ALJ's decision is not supported by substantial evidence; (2) the ALJ failed to give proper weight to the opinion of the treating physicians; (3) the ALJ failed to properly weigh Plaintiff's subjective complaints of pain, ignored or mischaracterized the findings which support her complaints, and did not articulate his reasons for rejecting her credibility; (4) the ALJ failed to a consider the combination of her severe impairments and the effects of her medication; (5) the ALJ miscategorized her educational background and failed to consider the effects of her limited education on her ability to perform SGA; (6) the ALJ failed to pose complete hypotheticals to the vocational expert; (7) the ALJ failed to properly apply SS rulings in determining the effect of her bilateral hand impairments; and (8) the ALJ incorrectly used the Medical-Vocational Guidelines as a guideline for his decision.

**No. 1:02CV125-SPM/AK**

The government responds that the ALJ properly considered her allegations of pain and specifically articulated his reasons for finding her allegations not entirely credible, particularly that the objective medical tests (MRI and nerve conduction studies) did not confirm a severe back impairment or a condition that would cause severe bilateral hand pain.  The ALJ also found that her continued smoking, despite repeated warnings that it exacerbated her stomach problems, was considered noncompliance with treatment that went against her complaints of pain and limitation.  The ALJ also articulated specific reasons he did not accord significant weight to her treating physicians, and a showing of good cause is all that is required when the opinion of disability is inconsistent with the medical treatment notes.  The Commissioner also argues that the ALJ did not exclusively rely on the grids, he used a vocational expert to help support his finding that Plaintiff could perform a number of jobs in the national economy, and therefore, his reference to her limited education (which is the lowest level in the grids) was not error.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D.**   **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422

**No. 1:02CV125-SPM/AK**

(11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

        A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

No. 1:02CV125-SPM/AK

expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To

qualify as a disability the physical or mental impairment must be so severe that claimant

is not only unable to do his previous work, "but cannot, considering his age, education,

and work experience, engage in any other kind of substantial gainful work which exists

in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

      Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in

five steps:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

      A finding of disability or no disability at any step renders further evaluation

unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps

him from performing his past work.  If Plaintiff establishes that his impairment keeps him

from his past work, the burden shifts to the Commissioner at step five to show the

existence of other jobs in the national economy which, given Plaintiff's impairments,

Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986);

MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner

**No. 1:02CV125-SPM/AK**

carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**E.     SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff's medical history begins with a gastric bypass surgery for morbid obesity on September 25, 1991, performed by Dr. Robert Rout.  (R. 448).  Additional surgery on April 29, 1996, was performed to repair staple dehiscence and a ventral hernia.  (R. 441).  On January 2, 1997, two other incisional hernias were repaired.  (R. 433, 435).  One year later (January 1998) she was noted to have another ventral hernia and another surgery was scheduled.  (R. 431).  Surgery was performed on March 2, 1998, by Dr. Rout again.  (R. 429-430).  Apparently, the hernia recurred by May 19, 1998, and another surgery was to be scheduled for repair with mesh implant.  (R. 428).  This surgery was performed on June 17, 1998, with instructions of no heavy lifting for 4 weeks.  (R. 426-427).  On September 23, 1999, she presented with abdominal pain after lifting a heavy object, and an abdominal ultrasound was scheduled to rule out another hernia.  (R. 423).  She reported on November 28, 2000, that she had continued abdominal pain with daily vomiting.  (R. 418).  She was told to quit smoking and was scheduled to see OB/GYN and Dr. Rout that day for a consultation.  (R. 418).  She had a D&C on May 7, 2001.  (R. 414).  On June 26, 2001, she reported to Dr. Rout

**No. 1:02CV125-SPM/AK**

continued bleeding and abdominal pain and he suggested that she coordinate with her gyn to have a hysterectomy at the same time he performed a repair of her staple line. (R. 363). The staple line repair was scheduled for October 29, 2001, (r. 357-364). She was readmitted to the hospital on November 20, 2001, for left upper quadrant pain which turned out to be a urinary tract infection and fluid in her abdomen. (R. 355-356). A CT scan revealed multiple intra-abdominal fluid collections too small to drain and she was given antibiotics to resolve the infection. (R. 338, 346-347).

General medical care was provided by Drs. Michael Huey and Mack Tyner. Treatment records indicate that she first came to the UF Family Practice Clinic on June 15, 1999. (R. 276-277). At the time of this examination she was still working as a bus driver and was found to be anemic with stomach difficulties. (R. 274). By September 12, 2000, she was still experiencing abdominal pain and was being encouraged to see Dr. Rout. (R. 264). Her anemia, which was believed to stem from increased and excessive menstrual blood loss, as well as her gastric bypass, was being treated with contraceptives. (R. 264). She began to complain about lower back pain, believed to be from sitting in the bus seat, and was told to see a worker's comp physician since it was work related. (R. 264). By January 31, 2001, she was on medical leave from work and had been admitted for one day at Shands to receive a blood transfusion. (R. 259). She had an MRI for her back which revealed mild disc bulging at L3-4 with an annular tear in a central location. (R. 257). In July of 2001, she had a gynecological procedure without good result as she was still bleeding, and her GI endoscopy revealed a dehiscence of

No. 1:02CV125-SPM/AK

the staple line creating an opening between her gastric pouch and the gastric fundus. (R. 255). She was scheduled for surgical repair. She had continued to be anemic and was still not working. (R. 255). She was repeatedly advised to quit smoking because of the problems and risks it created for her with regard to the upcoming surgery. (R. 253). She reported to Dr. Tyner on December 11, 2001, that she had the stomach surgery with some complications, was still having abdominal pain, and was scheduled for follow up on her gyn problems and at the Spine Clinic for continued treatment of her lumbar pain. (R. 251). On March 26, 2002, Plaintiff requested a disability letter from Dr. Tyner and was seeking a second opinion from Dr. Thoburn on her stomach problems since a recent barium study revealed two more holes in her stomach and Dr. Rout had indicated he could do nothing for her for at least six months. (R. 238). She reported that the recent surgery did not alleviate her abdominal pain at all. The Spine Clinic was not able to help her with her back pain until the stomach issues were resolved. On April 15, 2002, she again brought a disability form for completion and complained of continued problems with no relief. (R. 236). On July 12, 2002, Plaintiff returned for referral to another surgeon since Dr. Thoburn told her he could only do a revision of her gastric pouch, which she was not interested in. (R. 234). Dr. Tyner prepared a RFC on January 29, 2004, and found her to be incapable of lifting over 10 pounds, that she could sit less than 2 hours a day, and various other rather severe limitations based on carpal tunnel syndrom and low back pain. (R. 531-533).

**No. 1:02CV125-SPM/AK**

A consultative examination by Dr. Greenberg revealed that she has hypertension, chronic low back pain from osteoarthritis, chronic abdominal pain from previous surgeries, with history of throat polyps.  (R. 165).  He opined that she would be precluded from heavy lifting or bending, but noted no other restrictions. (R. 165).

Plaintiff's eyes were examined and Dr. Petitto diagnosed her on September 3, 2002, with optic neuropathy and maculopathy.  (R. 221-227).

Plaintiff's mental status was assessed by psychologist Andres Nazario, who performed a consultative examination on September 13, 2001, and found that her emotional condition did not preclude employment and appeared to be secondary to her physical problems.  (R. 177-179).  As a result, a Psychiatric Review form completed by Dr. Zelenka found no severe impairment with only mild restrictions.  (R. 180-191). Zelenka also concluded that her limitations in functioning were due to chronic pain, not as a result of mental problems.  (R. 192).  Another Psychiatric Review Form completed by Dr. Jane Cormier on May 2, 2002, was in accord.  (R. 199-212).

Objective tests include an x-ray of the lower back on October 18, 2000, which revealed minimal degenerative disk disease with mild disc bulge at L3-4.  (R. 397-398). A neurology report dated June 30, 2003, found that Plaintiff "appears" to have carpal tunnel syndrome for which he prescribed wrist splints to be worn at night, but that she did not want to have surgery.  (R. 529-530).  Later nerve conduction studies in October showed improvement.  (R. 536-538).  Dr. Sebnem Erbay could not explain why Plaintiff had pain in her hands. (R. 534-541).  X-rays of the lumbar spine taken at this time

**No. 1:02CV125-SPM/AK**

showed mild degenerative changes and mild disc space narrowing.  (R. 540).

Apparently, she was negative for rheumatoid arthritis.   (R.534-536).

Visual acuity has been tested as 20/40 best corrected.  (R.223-227).

Several letters from Plaintiff's treating physicians are in the record, which support

a finding of total disability. Dr. Robert Rout and Dr. Boyd Kellett, completed forms for the

Florida Retirement System that indicated Plaintiff was permanently and totally disabled.

(R. 195-198).  Dr. Rout wrote another letter dated August 22, 2003, that Plaintiff should

receive disability and refers generally to the attached medical records as support for his

opinion.  (R. 470-515).  He does not specify which of the medical problems he

addressed in the supporting treatment notes constitutes a disabling condition.  Dr. Tyner

completed a form on July 17, 2003, where he stated that he believed Plaintiff was totally

precluded from work, even with restrictions, but could sit in a class room for one hour at

a time.  (R. 509).  A later form dated October 27, 2003, by Dr. Tyner indicates that she

could work with childcare and restrictions of no repetitive motion of her right arm, which

were permanent restrictions, limiting her to 11 to 20 hours per week.  (R. 502).

Several functional assessments have been done, which include one completed

on September 11, 2001, restricting her to lifting 10 to 20 pounds, sitting, standing and

walking six hours out of an 8 hour day.  (R. 170).  Postural limitations included only

occasional balancing, stooping, crouching, or crawling, with no manipulative restrictions,

and only one environmental limitation of working with hazardous materials.  (R. 171-

173).  This assessment was based on treating medical sources in the record.  (R. 175).

**No. 1:02CV125-SPM/AK**

A later RFC dated June 6, 2002, was virtually the same.  (R. 213-220).  Dr. Tyner

completed an RFC on January 29, 2004, limiting Plaintiff to less than 10 pounds,

standing or walking less than 2 hours in an 8 hour day, with a sit/stand option, and

limited in her push/pull abilities.  (R. 531-533).  Her fine manipulation skills were limited

because of her carpal tunnel syndrome, as was any work with hazardous materials.  (R.

533).

**F.      SUMMARY OF THE ADMINISTRATIVE HEARING (February 23, 2004)**

        Plaintiff appeared at the hearing with her attorney, Martin Goldberg, who

represents her presently.  (R. 27).  She was 43 years old at the time of the hearing and

completed the ninth grade in special education classes.  (R. 28).  She testified that she

can read only bits and pieces of a newspaper.  (R. 28).  Her last job was as a school

bus driver for 12 years, which she had not done since 2000.  (R. 29).  She left this job

after a surgical repair of her stomach in November 2000.  (R. 30-31).  She first had her

stomach stapled in 1991 for a weight problem, then she had a stomach hernia in 1996,

and she's had five more repairs since.  (R. 32-33).  Dr. Rout has performed these

surgeries, but she continues to suffer from daily pain in her stomach, including vomiting.

(R. 34-35).  Her pain level contributes to her high blood pressure.  (R. 36).  She is also

anemic, and has two deteriorating discs in her back which cause her difficulty in

walking, sitting and getting up.  (R. 39).  She is presently on Lortab for the pain.  (R. 39).

She also wears splints on both wrists for carpal tunnel syndrome which causes her to

drop things.  (R. 40).  She has two children, ten and eight, and lives with her parents.

**No. 1:02CV125-SPM/AK**

(R. 42-43).  On a bad day, Plaintiff says she stays in bed all day long, but that this

happens only every two weeks.  (R. 45).  She says that she had bad back spasms, too,

that get worse about every two weeks.  (R. 47).  A vocational expert testified that

Plaintiff's prior work as a bus driver was medium level.  (R. 50).   He was asked to

assume a 43 year old individual, limited to sedentary work with the following restrictions:

they require the freedom to stand up and loosen up for a minute or two every half hour;

they could not use their hands for frequent repetitive activity, that is they could use their

hands for varied activities, but not repetitive; and that they will occasionally drop items,

so they would be precluded from working with hazardous materials.  (R. 50-51).  The

expert identified a number of jobs which Plaintiff could perform such as surveillance

systems monitor, charge account clerk, information clerk.  (R. 51).  The ALJ added to

the hypothetical that she could only use her hands 50% of the time and the expert said

such a limitation would not preclude any of the jobs named, except charge account

clerk.  (R. 52).  He also added that none of the jobs required forceful gripping.  (R. 52).

The attorney asked the expert if her limited education would affect any of these jobs.

Specifically, he asked:

> Q  Mr. Dolan, you heard the testimony regarding the Claimant's education,
> last grade completed 8th grade, special classes, reading difficulties.
> Taking that into account, is it your testimony that you don't see that as an
> impediment in any of these jobs which you've cited?
>
> A  From what I – I would need a further clarification.  The claimant did
> testify that she was able to do some writing and some reading of the
> newspaper.  Unless there's clarification I don't believe there would be an
> issue.

**No. 1:02CV125-SPM/AK**

Q  Okay.  For instance, for an information clerk is that something where you would have to do a fair amount of reading.

***

A  --it would be, as an example, at a mall where you'd be sitting behind a counter giving directions to someone in terms of where Sears is or another store.  It could also be in an office building giving directions to where a various office would be.

***

Q  --and a charge account clerk?

A In terms of taking credit information I – there is a potential, there would be perhaps a potential problem.  Again, I, unless I got a little bit of clarification in terms of the reading issue.  (R. 53-54).

The ALJ left the record open for 30 days to get more medical information regarding Plaintiff's rheumatoid arthritis, and nerve conduction studies on her hands.  (R. 56-57).

## G.   DISCUSSION

### a)    Substantial evidence and the opinions of treating physicians

Plaintiff's first two grounds will be treated as one discussion since the argument is basically the same, that is there is no controverting evidence that she is not disabled in the record, and because there is no such evidence, the ALJ must accept the opinions of Plaintiff's treating physicians who find her totally disabled.

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986).  Good cause may be found when the

**No. 1:02CV125-SPM/AK**

opinion is "not bolstered by the evidence," the evidence "supports a contrary finding,"
the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight,"
the opinion is "inconsistent with [the treating physician's] own medical records," the
statement "contains no [supporting] clinical data or information," the opinion "is
unsubstantiated by any clinical or laboratory findings," or the opinion "is not
accompanied by objective medical evidence." Lewis v. Callahan, 125 F.3d 1436, 1440
(11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing
Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  If an ALJ rejects a treating
physician's opinion, he must give explicit, adequate reasons for so doing, and failure to
do so results in the opinion being deemed accepted as true as a matter of law.
MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957
F.2d 837, 841 (11th Cir. 1992).

The Commissioner argues in response that the ALJ clearly considered the three
reports of Drs. Tyner, Kellett and Rout, who found that Plaintiff was totally disabled, and
articulated reasons for rejecting these opinions.  The ALJ noted that Dr. Tyner had
conflicting reports, one completed in July 2003, with significant restrictions, and another
3 months later that is less restrictive.  The ALJ also found that Dr. Kellet's letter was
supported by no medical evidence, and Dr. Rout's letter did not specify what impairment
or precisely what medical evidence supported his conclusory finding of total disability.
The ALJ did afford significant weight to a later report from Plaintiff's treating physician
Dr. Tyner (January 29, 2004) which he found more consistent with tests and

**No. 1:02CV125-SPM/AK**

examinations of the same time period, and also of weight was the report of Dr.

Greenberg, a consultative examiner, whose RFC assessment formed the bases of the

ALJ's opinion.  Consequently, there were contrary medical opinions in the record, and

the ALJ specifically expressed good cause for rejecting some opinions and accepting

others.  Since this is the standard for assessing treating physician's medical evidence,

there is no merit to this ground.

> b)   Plaintiff's subjective complaints

Pain and other subjective symptoms are treated by the regulations as symptoms

of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not

find disability based on symptoms, including pain alone, "unless medical signs or

findings show that there is a medical condition that could be reasonably expected to

produce these symptoms."  Accord 20 C.F.R. § 416.929.  In Hand v. Heckler, 761 F.2d

1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there
> must be objective medical evidence to confirm the severity of the alleged
> pain arising from the condition or (2) the objectively determined medical
> condition must be of a severity which can reasonably be expected to give
> rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test.  Elam v. Railroad Retirement

Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th

Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991).

"While both the regulations and the Hand standard require objective medical evidence

of a condition that could reasonably be expected to cause the pain alleged, neither

**No. 1:02CV125-SPM/AK**

requires objective proof of the pain itself." Elam, 921 F.2d at 1216.  The court has held

that "[p]ain alone can be disabling, even when its existence is unsupported by objective

evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), citing Walker v.

Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).  Standing alone, however, a claimant's

testimony of pain is not conclusive evidence of disability.  Macia v. Bowen, 829 F.2d

1009, 1011 (11th Cir. 1987).  If the Commissioner rejects a claimant's allegations of

pain, he must articulate explicit and adequate reasons, and these reasons must be

based on substantial evidence.  Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).

The failure to articulate adequate reasons for discrediting pain testimony mandates that

the testimony be accepted as true as a matter of law.  Cannon v. Bowen, 858 F.2d

1541, 1545 (11th Cir. 1988).

　　　Plaintiff argues that the medical record establishes that she is prescribed narcotic

pain medication, she has had ten different surgical procedures, and there are objective

tests to support chronic abdominal pain, spinal and bilateral hand problems, all

conditions which would produce pain.

　　　The Commissioner argues that the ALJ properly found that an MRI does not

support a severe condition in her spine, and nerve conduction studies showed

improvement in her carpal tunnel syndrome.  He references Dr. Erbay's report that he

could not account for the reported severe pain in her hands.  Nonetheless, the ALJ

included a hand limitation in his RFC assessment in that she frequently dropped items,

could not perform frequent and repetitive activities, and she should not be exposed to

**No. 1:02CV125-SPM/AK**

hazards.  The Commissioner also noted that non-compliance is a ground for discrediting Plaintiff's allegations, where as here she was told numerous times to stop smoking, that it caused gastrointestinal problems, yet she continued to smoke.

The undersigned is of the opinion that the ALJ did not adequately discredit Plaintiff's allegations of abdominal pain and daily vomiting to obviate the need to address this particular type of pain as it may have affected her ability to work.  The ALJ found that she had chronic abdominal pain which was severe within the meaning of the regulations (R. 17), yet the only reason he cited for finding her allegations of pain to be less than credible was because she continued to smoke.  He references in particular Dr. Huey's statement that smoking interfered with her gastrointestinal function and flow.  (R. 258).  While other physicians also strongly suggested that she quit smoking, none of them clearly linked her continued smoking with her continued abdominal pain or the daily vomiting.  The medical evidence shows that her continued abdominal problems were because the sutures from her previous gastric bypass were separating and the repeated surgeries were to repair the suture line or hernias that had developed, and if her continued smoking was directly causing these issues, the doctors were not clear in telling her this.  No doctor, at least not in the evidence before the Court, told Plaintiff that her pain and vomiting and additional surgeries were the result of smoking or that these conditions would improve if she quit.  Perhaps that is what Dr. Huey was inferring when he said smoking interfered with function and flow, but his admonition to quit should have

**No. 1:02CV125-SPM/AK**

been more direct than this for the ALJ to use her failure to quit as grounds for completely discrediting her claims of abdominal pain.

The cases cited by the Commissioner refer to "non-compliance" as a refusal to follow prescribed medical treatment without a good reason such as failing to take medication that would alleviate the condition.  See Ellison v. Barnhart, 355 F.2d 1272, 1275 (11th Cir. 2003).  If the ALJ's decision to discredit a person's allegations of pain and limitation is *entirely* based on non-compliance, he must make additional findings on the records such as the Claimant's ability to afford the medical treatment.  Id.  See also Dawkins v. Bowen, 848 F.2d 1211 (11th Cir. 1988).  In this instance, although the doctors advised Plaintiff to quit smoking it was not a medical treatment that she was told to undergo nor was the advice linked sufficiently, in the undersigned's opinion, to her medical conditions as to constitute a refusal to comply with a prescribed course of treatment.  In reading the Eleventh Circuit's law on the issue, it appears that if non-compliance is the sole factor upon which the ALJ bases a credibility determination the ALJ should make additional findings of cause for failing to take the medical advice given to the person.  Thus, the undersigned is of the opinion that the ALJ failed to articulate sufficient reasons for discrediting Plaintiff's allegations of abdominal pain, and therefore, her allegations should be taken as true and have been included in a RFC assessment and in the hypothetical posed to the vocational expert.  See Cannon , supra.

**No. 1:02CV125-SPM/AK**

c)      Combination of Impairments

Plaintiff argues that the ALJ should have addressed all of her impairments, and he failed to make specific and well articulated findings as to her anemia and the effect chronic fatigue would have upon her ability to work.

The Commissioner does not specifically address this argument in her memorandum.

As the Court has stated above with regard to the ALJ's assessment of her subjective complaints, including pain and fatigue, he failed to adequately articulate his reasons for discrediting her claims and therefore should have included these limitations in his hypothetical to the expert for consideration of their affect on her ability to work. Therefore, this ground is well taken, and as set forth below, the ALJ should pose these non-exertional limitations in his hypothetical to the expert upon remand.

d)      Plaintiff's education

Plaintiff contends that the ALJ mischaracterized her testimony regarding her education, specifically he stated that she "testified that she completed the eighth grade with special education classes, but she could read the newspaper and do some writing." (R. 12).  Her testimony was actually that she can only read "bits and pieces" of a newspaper, and must have help in completing forms.  (R. 28).

The Commissioner argues that the ALJ found her to have limited education based on her testimony that she completed the eighth grade in special education classes.  The Commissioner contends that this is the lowest grid category, and the

No. 1:02CV125-SPM/AK

ALJ's decision was based on a vocational expert, who testified at the hearing, not the guidelines.

The undersigned does not understand the Commissioner's argument that limited or less is the lowest grid category concerning education. See Medical-Vocational Guidelines, 20 CFR Pt.404, Subpt. P. App.2. Illiteracy is the lowest category, but Plaintiff does not appear to fit into this category, and the Commissioner is correct that an expert testified regarding her educational background, which he heard at the hearing and applied in his calculations, such that any incorrect reference by the ALJ to the wrong grid section or any slight mischaracterization of her background as cited in his opinion is deemed harmless error. See Lubinski v. Sullivan, 952 F.2d 214, 216 (8th Cir. 1991); Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (an error by the ALJ will be held harmless if the evidence is strong enough to support the outcome despite the lapse).

e)    Hypothetical questions

At the fifth step of the evaluation process, the ALJ must determine whether a Claimant, based on his residual functional capacity, age, education and work experience, can adjust to other work in the national economy. 20 C.F.R. § 404.1520(a)(4). The ALJ may make this determination by reliance upon the Medical Vocational Guidelines or by utilizing the services of a vocational expert. Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004). The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of

**No. 1:02CV125-SPM/AK**

claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level."  Wolfe v. Chater, 86 F.3d at 1078, quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992).  See also Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995).  "It is only when the claimant can clearly do unlimited types of  work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy."  Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted).  Exclusive reliance upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities.  Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990).

When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her.  Phillips, 357 F.3d at 1240.  In order for the expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which includes all of Claimant's impairments.  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert.  Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).

Plaintiff contends that the ALJ did not include pain, the use of narcotic medication, fatigue, daily vomiting and weakness, or her educational and literacy limitations in his hypothetical to the vocational expert.

**No. 1:02CV125-SPM/AK**

The Commissioner responds that the ALJ included those limitations he found to be supported by the record in the hypothetical which asked the expert to assume a 43 year old individual, limited to sedentary work with the following restrictions: they require the freedom to stand up and loosen up for a minute or two every half hour; they could not use their hands for frequent repetitive activity, that is they could use their hands for varied activities, but not repetitive; and that they will occasionally drop items, so they would be precluded from working with hazardous materials. (R. 50-51).

As the hypothetical above reflects, the ALJ did not include any restrictions due to abdominal pain or fatigue, did not mention the use of narcotic medication as a factor in her ability to work, or her report of daily vomiting, although he specifically found Plaintiff to have chronic abdominal pain and pernicious anemia.  (R. 17).  Because it is the opinion of the undersigned that the ALJ failed to articulate sufficient cause for discrediting her subjective testimony describing these conditions and limitations, they should have been included in the hypothetical presented to the expert and because they were not, this case should be remanded for additional expert testimony also.

f)      Social Security Rulings regarding bilateral hand limitations

Plaintiff argues that the grids should not be used when evidence shows that permanent injury to the hand or hands affecting bilateral manual dexterity would significantly compromise the ability to perform a full range of sedentary work.  However, the evidence supports the ALJ's finding that the carpal tunnel syndrome was resolving, particularly objective nerve conduction tests, and contrary to Plaintiff's assertion, the

ALJ did not rely exclusively on the grids.  He obtained expert testimony.  Even though there was medical support questioning the pain and limitation in her hands, as alleged by the Plaintiff, the ALJ still included some restriction in his hypothetical to the expert which included that she could not use her hands for frequent repetitive activity, and that she would occasionally drop items, so she would be precluded from working with hazardous materials. (R. 50-51).  Even with these manual limitations, the expert identified a number of sedentary jobs which she could perform.  Thus, this ground for relief is not well taken.

g)       Medical-Vocational Guidelines

Plaintiff contends that the ALJ found that Plaintiff had non-exertional limitations, yet used the grids, and also, cited to Rule 201.26 as a framework for his decision making, but this rule refers to someone who has transferable skills and he found that "transferable skills from any past relevant work is not an issue in this case."

As the Commissioner contends, the ALJ did not rely exclusively on the grids, he called a vocational expert to testify at the hearing and it was his testimony that there were jobs she could perform that formed the bases of the ALJ's decision, the grids were only a framework.  Thus, this ground for relief is also not well taken.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **REVERSED** and this cause **REMANDED** for further proceedings to include additional vocational expert testimony to include assessment of her abdominal pain, fatigue and weakness, and

**No. 1:02CV125-SPM/AK**

reported nausea and/or daily vomiting, as well as the use of narcotic pain medication on her ability to work.

At Gainesville, Florida, this  **18th** day of August, 2006.


**S/ A. KORNBLUM**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:02CV125-SPM/AK**